******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# VICTOR JORDAN, SR. *v.* COMMISSIONER OF CORRECTION
## (AC 48237)

Cradle, C. J., and Elgo and Clark, Js.[*]

*Syllabus*

The petitioner, who previously had been convicted of aggravated sexual assault in the first degree, appealed, following the granting of certification to appeal, from the habeas court's judgment denying his petition for a writ of habeas corpus. The petitioner argued that the court improperly determined that his claim that he had a due process right under *State* v. *Wang* (312 Conn. 222) to public funds to assist him in establishing a defense at his criminal trial was procedurally defaulted. *Held*:

The habeas court erred in determining that the respondent, the Commissioner of Correction, had abandoned his defense of procedural default by failing to argue it in his posttrial brief, that defense having been squarely before the court in that the petitioner addressed it in his briefs and both parties elicited testimony about it at trial, and, as there was no dispute that the respondent had alleged procedural default in his return to the habeas petition, the respondent was not required to produce or prove anything more.

The petitioner was not precluded under the rules of practice, as he contended, from raising his due process claim under *Wang* on the ground that no procedural avenue existed for him to do so on direct appeal from his conviction or before petitioning our Supreme Court for certification to appeal, as his appellate counsel on direct appeal had been aware of the due process claim but chose not to raise it, the petitioner thereafter failed to establish cause and prejudice to overcome that default, and he offered no persuasive reason why he could not have alerted this court on direct appeal or our Supreme Court through either a motion for reconsideration or a petition for certification to appeal that *Wang* purportedly applied to his case.

Argued March 24—officially released August 11, 2026

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *Hon. Carl J. Schuman*, judge trial referee; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed*.

[*]The listing of judges reflects their seniority status on this court as of the date of oral argument.

*Nicole P. Britt*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Timothy J. Sugrue*, assistant state's attorney, with whom, on the brief, were *Christian M. Watson*, state's attorney, *Jo Anne Sulik*, senior assistant state's attorney, and *Donna Marie Fusco*, assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Victor Jordan, Sr., appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly determined that he had not established a violation of his fourteenth amendment due process right to access the tools of an adequate defense, as established in *Ake* v. *Oklahoma*, 470 U.S. 68, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985), and its progeny.[1] The respondent, the Commissioner of Correction, claims that the petitioner's due process claim was procedurally defaulted. We agree with the respondent and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history, as found by the habeas court or as undisputed from the record, are relevant to our resolution of this appeal. The petitioner was arrested and charged with aggravated sexual assault in the first degree in violation of General Statutes (Rev. to 2007) § 53a-70a (a) (1) in connection with a sexual assault that occurred in Southington on February 21, 2008.

After his arrest, the petitioner engaged in a series of disruptive behaviors during his pretrial proceedings that

---

[1] To the extent the petitioner claims that both this court and our Supreme Court had an independent judicial responsibility to sua sponte identify, raise, and decide that due process claim during his direct appeal; see *State* v. *Jordan*, 151 Conn. App. 1, 2, 92 A.3d 1032, cert. denied, 314 Conn. 909, 100 A.3d 402 (2014); that argument is meritless and warrants no further discussion.

"unfolded over the course of twenty-four court appearances from June 30, 2010, through December 6, 2011." *State* v. *Jordan*, 151 Conn. App. 1, 3, 92 A.3d 1032, cert. denied, 314 Conn. 909, 100 A.3d 402 (2014). In the direct appeal from his conviction, this court described the petitioner's disruptive behaviors, which included refusing to enter the courtroom, refusing to respond to the court, threatening standby counsel, threatening appointed counsel, using profane language, attending court partially dressed, seemingly faking medical incidents to avoid court appearances, and behaving raucously in the court's holding cell. Id., 3–27.

Relevant to the present appeal, on October 26, 2010, the trial court granted the petitioner's request to proceed in a self-represented capacity and appointed the public defender's office as standby counsel.[2] When he was self-represented, the petitioner requested at hearings held on December 21, 2010, and April 6 and 13, 2011, that the court compel the state to pay for a private investigator. The court, on three separate occasions, offered the petitioner the services of the Office of the Public Defender's investigators for free, but declined to grant the petitioner's request for state funds to hire a private investigator of his choosing. The petitioner declined those three offers. On April 13, 2011, after the petitioner again declined the court's offer to make the Office of the Public Defender's investigators available to him, the petitioner engaged in disruptive behavior that included using profanity, attempting to leave the courtroom, and requesting to be placed in the basement lockup. In light of the petitioner's disruptive behavior, the court found that he had waived his right to represent himself and accordingly appointed an attorney from the public defender's office to represent the petitioner.[3]

---

[2] Assistant Public Defenders Claud Chong and Christopher Eddy were present at several proceedings as standby counsel on behalf of the petitioner.

[3] Chong was initially appointed to represent the petitioner after the trial court determined that the petitioner had waived his right to represent himself. Chong informed the court that he had a conflict with the proposed trial dates and that Eddy would represent the petitioner at trial.

The petitioner's appointed counsel, Eddy, thereafter filed a motion to withdraw his appearance, citing a conflict of interest.[4] Following a hearing on May 11, 2011, the trial court granted Eddy's motion and appointed a special public defender to represent the petitioner. Attorney Andrew Cates was subsequently assigned to represent the petitioner and filed an appearance on his behalf. *State* v. *Jordan*, supra, 151 Conn. App. 9–11.

"On July 27, 2011, evidence in the [petitioner's] trial began before [the court] . . . ." Id., 27. "On August 11, 2011, the court found the [petitioner] guilty of aggravated sexual assault in the first degree." Id., 29. On December 6, 2011, the court sentenced the petitioner "to a term of twenty years' imprisonment, to be served consecutively to his present sentence, plus lifetime registration as a sex offender." Id., 30. On June 17, 2014, this court affirmed that judgment of conviction. Id., 38.

On the same day that this court's decision in the petitioner's direct appeal was released, our Supreme Court decided *State* v. *Wang*, 312 Conn. 222, 92 A.3d 220 (2014). In *Wang*, our Supreme Court applied *Ake* v. *Oklahoma*, supra, 470 U.S. 68, and its progeny, and concluded that "an indigent self-represented defendant has a fourteenth amendment due process right to be provided public funds to obtain expert or investigative assistance, provided that he makes a threshold showing that such assistance is reasonably necessary for the preparation and presentation of an adequate defense." *State* v. *Wang*, supra, 264. Following our Supreme Court's decision in *Wang*, and notwithstanding the fact that the deadline for doing so had not expired, the petitioner did not file a motion for reconsideration with this court, asserting a claim that *Wang* was pertinent to his direct appeal. The petitioner subsequently filed with our Supreme Court a

---

[4]"The public defender's office previously had represented the victim in the [petitioner's underlying criminal] case on two unrelated matters, and thus Eddy argued that because of his knowledge of confidential information about the victim, a special public defender should be appointed to represent the [petitioner] so as to avoid a conflict of interest." *State* v. *Jordan*, supra, 151 Conn. App. 10 n.2.

petition for certification to appeal from this court's decision in his direct appeal, which was denied. See *State* v. *Jordan*, 314 Conn. 909, 100 A.3d 402 (2014). The petitioner did not raise any claim in that petition regarding a due process violation pursuant to *Wang* or *Ake*.

The petitioner filed his first habeas petition in 2015, alleging that his criminal trial counsel had rendered ineffective assistance in a variety of ways. The habeas court denied the petition. This court summarily affirmed the judgment of the habeas court, and our Supreme Court denied certification to appeal. See *Jordan* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-12-4004711 (August 4, 2015), aff'd sub nom. *Jordan* v. *Commissioner of Correction*, 169 Conn. App. 908, 155 A.3d 329 (2016), cert. denied, 325 Conn. 905, 156 A.3d 536 (2017).

The petitioner filed the habeas petition in the present action on September 21, 2015. The petitioner filed an amended petition, the operative petition, on November 6, 2020. Therein, the petitioner alleged ineffective assistance of counsel on the part of (1) Chong and Eddy; (2) his trial counsel, Cates; (3) his criminal appellate counsel, Attorney Pamela Nagy; and (4) his first habeas counsel, Attorney Howard Wicker.[5] The petitioner also alleged that the trial court's denial of his request for funding to retain a private investigator violated his due process rights as articulated in *Wang*.

On February 25, 2021, the respondent filed his return, largely leaving the petitioner to his proof. In addition, the respondent also raised procedural default as a defense to the petitioner's due process claim pursuant to *Wang*. On June 11, 2024, the petitioner filed an amended reply, in which he argued that the doctrine of procedural default did not apply to his due process claim because *Wang* was

[5]The habeas court subsequently denied the petitioner's claims of ineffective assistance on the part of his standby, trial, appellate, and habeas attorneys. The propriety of the court's determinations regarding the petitioner's allegations of ineffective assistance of counsel are not at issue in this appeal.

decided on the same day that this court released its decision in his direct appeal. The petitioner alternatively alleged that cause and prejudice existed to overcome default.

The habeas court held a trial on the petitioner's amended petition for a writ of habeas corpus on May 22 and June 12 and 18, 2024. At trial, the court heard testimony from Eddy, Chong, Cates, Nagy, Wicker, fact witness Herman Cordero, and expert witness Attorney Vishal K. Garg. The petitioner did not testify.

In its October 7, 2024 memorandum of decision, the court initially determined that the respondent had waived his defense of procedural default by failing to raise it in his posttrial brief. The court also determined that *Wang* did not apply retroactively to the petitioner's case. The court further determined that, "even assuming *Wang* applies retroactively to this case, there was no violation of *Wang*." Accordingly, the court denied the petitioner's amended petition for a writ of habeas corpus. The court thereafter granted his petition for certification to appeal. This appeal followed.

We begin with the respondent's contention that the petitioner's due process claim is barred by procedural default. The petitioner argues that (1) the habeas court correctly determined that the respondent abandoned his procedural default defense, and, alternatively, (2) cause and prejudice exist to overcome procedural default. We agree with the respondent.

We first must determine whether the respondent abandoned the defense of procedural default. The habeas court determined that the respondent effectively abandoned that defense by failing to brief it in his posttrial brief.[6] On appeal, the respondent argues that he never

---

[6]Although it is undisputed that the respondent pleaded procedural default in his return, the respondent did not argue that the petitioner's due process claim was barred by procedural default in his posttrial brief and, instead, briefed his successive petition defense. The habeas court subsequently determined that "[t]he respondent may have meant to raise the ground of procedural default [in his posttrial brief] but,

abandoned his procedural default defense. The petitioner argues that the respondent did not properly raise and pursue the procedural default defense, and that the habeas court therefore correctly concluded that the respondent had abandoned that defense. Specifically, the petitioner claims that merely raising procedural default in a return is insufficient to properly raise and pursue it as an affirmative defense, citing several Superior Court cases that determined that the respondent had abandoned that defense by failing to include it in a posttrial brief. We agree with the respondent.

Abandonment presents a mixed question of law and fact, over which we exercise plenary review. See *Solek* v. *Commissioner of Correction*, 107 Conn. App. 473, 479, 946 A.2d 239, cert. denied, 289 Conn. 902, 957 A.2d 873 (2008).

Generally, a defendant, after raising an affirmative defense, has the burden of proving that defense at trial. See, e.g., *Moon* v. *Commissioner of Correction*, 354 Conn. 181, 200, 350 A.3d 496 (2026) (noting criminal defendant has burden of proof for certain affirmative defenses at trial); *Pirri* v. *Chow*, 231 Conn. App. 493, 501, 333 A.3d 833 (2025) (noting civil defendant has burden of proof for certain affirmative defenses at trial). The respondent has the burden of raising procedural default in his return. See, e.g., Practice Book § 23-30 (b) ("[t]he return . . . shall allege any facts in support of any claim of procedural default"); *Milner* v. *Commissioner of Correction*, 63 Conn. App. 726, 734, 779 A.2d 156 (2001) ("[w]e . . . are persuaded that in Connecticut, although the petitioner has the burden of proving cause and prejudice . . . that burden does not arise until after the respondent raises the claim of procedural default in [the] return" (citation omitted)).

Unlike other affirmative defenses, "[o]nly after the respondent raises the defense of procedural default in

in the absence of a defect in subject matter jurisdiction, which is not present here, the court can only address the defenses actually raised by the respondent."

accordance with [Practice Book] § 23-30 (b) does the burden shift to the petitioner to allege and prove that the default is excused." *Crawford* v. *Commissioner of Correction*, 294 Conn. 165, 176, 982 A.2d 620 (2009). Upon the respondent raising procedural default, "the burden is on the petitioner to prove cause and prejudice." *Council* v. *Commissioner of Correction*, 286 Conn. 477, 489, 944 A.2d 340 (2008); see also *Anderson* v. *Commissioner of Correction*, 114 Conn. App. 778, 791, 971 A.2d 766 ("[m]oreover, the respondent was under no additional burden to identify facts in the record to support a direct appeal; rather, once the respondent raised the issue of procedural default, it was the responsibility of the petitioner to set forth facts and cause sufficient to permit review of his claims"), cert. denied, 293 Conn. 915, 979 A.2d 488 (2009).

Our analysis is further informed by our Supreme Court's analysis in *Council*. Therein, the respondent alleged procedural default in her return and argued it in her pretrial brief. *Council* v. *Commissioner of Correction*, supra, 286 Conn. 490. The habeas court determined, however, that the respondent had abandoned her procedural default defense because neither the petitioner nor the respondent had addressed the issue at the habeas trial. See id. On appeal, the respondent claimed that the habeas court had erred in concluding that the procedural default defense had been waived. Id. Our Supreme Court agreed and concluded that, "once the respondent raised the defense in her return, the burden shifted to the petitioner to allege and *prove* cause and prejudice. Because the petitioner failed to do so, his claims are procedurally defaulted." (Emphasis in original.) Id., 490–91. Our Supreme Court thereafter affirmed the judgment of the habeas court on the alternative ground that the petitioner's claim was procedurally defaulted. See id., 493.

In the present case, there is no dispute that the respondent's return alleged procedural default regarding the petitioner's due process claim. The petitioner,

furthermore, addressed procedural default in his amended reply, pretrial brief, posttrial brief, and posttrial reply brief before the habeas court. Moreover, the record reflects that both the petitioner and the respondent had elicited testimony from the petitioner's expert witness, Garg, regarding whether the petitioner's due process claim was procedurally defaulted. The procedural default defense was squarely before the habeas court, and we are not persuaded that the respondent abandoned it by failing to brief it in his posttrial briefs. After the respondent successfully raised procedural default in his return, the petitioner bore the burden to establish cause and prejudice to overcome the default at his habeas trial. The respondent was not required to produce or prove anything more, and thus the respondent did not abandon the procedural default defense. We therefore conclude the habeas court erred in determining that the procedural default defense had been abandoned.[7]

We next address the merits of the respondent's procedural default defense. The petitioner argues that he established cause and prejudice to overcome procedural default. Specifically, the petitioner argues that his *Wang* claim was not available to him in his direct appeal because *Wang* was decided the same day as this court's decision in the petitioner's direct appeal. Due to that unique procedural posture, he contends that the rules of practice did not provide him with an adequate procedural mechanism to raise his *Wang* claim, thus satisfying his cause and prejudice burden. We disagree.

We begin with our standard of review and relevant legal principles. Procedural default is a question of law over which we exercise plenary review. See, e.g., *Kukucka* v. *Commissioner of Correction*, 225 Conn. App. 159,

---

[7]Although we conclude that the habeas court erred in determining that the procedural default defense had been abandoned, we would encourage the Commissioner of Correction to argue procedural default in any future posttrial briefs in order to clearly articulate the defense for the habeas court and the habeas trial record.

165, 314 A.3d 631, cert. denied, 350 Conn. 904, 323 A.3d 342 (2024).

"In essence, the procedural default doctrine holds that a claimant may not raise, in a collateral proceeding, claims that could have been made at trial or on direct appeal in the original proceeding and that if the state, in response, alleges that a claimant should be procedurally defaulted from now making the claim, the claimant bears the burden of demonstrating good cause for having failed to raise the claim directly, and he must show that he suffered actual prejudice as a result of this excusable failure." *Hinds* v. *Commissioner of Correction*, 151 Conn. App. 837, 852, 97 A.3d 986 (2014), aff'd, 321 Conn. 56, 136 A.3d 596 (2016). "The cause and prejudice standard is designed to prevent full review of issues in habeas corpus proceedings that counsel did not raise at trial or on appeal for reasons of tactics, [inadvertence] or ignorance . . . . The procedural default doctrine is a prudential limitation on the right to raise constitutional claims in collateral proceedings that vindicates the interests of finality of judgments and uniformity." (Citation omitted; internal quotation marks omitted.) *Saunders* v. *Commissioner of Correction*, 343 Conn. 1, 9, 272 A.3d 169 (2022). Moreover, "[o]nce the respondent has raised the defense of procedural default in the return, the burden is on the petitioner to prove cause and prejudice. . . . [When] no evidence [of cause and prejudice] has been provided [to the habeas court], [the reviewing] court can independently conclude that the petitioner has failed to meet the cause and prejudice test." (Emphasis omitted; internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 211 Conn. App. 77, 96, 271 A.3d 1058, cert. denied, 343 Conn. 924, 275 A.3d 1213, cert. denied sub nom. *Lewis* v. *Quiros*,   U.S.   , 143 S. Ct. 335, 214 L. Ed. 2d 150 (2022). For the purposes of procedural default, a case is final when a conviction has been rendered and a criminal defendant has exhausted the availability of appeal. See, e.g., *Griffith* v. *Kentucky*, 479 U.S. 314, 321 n.6, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987) ("[b]y 'final,' we mean a case in which a judgment

of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied").

Practice Book §84-2 provides that certification for appeal to our Supreme Court is "not a matter of right but of sound judicial discretion and will be allowed only where there are special and important reasons therefor." Although §84-2 enumerates five reasons that our Supreme Court will consider in determining whether to grant certification, those reasons "neither [control] nor fully measur[e] the court's discretion . . . ." Our Supreme Court has observed that its "function on a petition for certification is to determine whether the petition raises a substantial question which should be considered by us in the interests of justice to the particular litigants . . . ." *State* v. *Cullum*, 149 Conn. 728, 730, 176 A.2d 587 (1961). Moreover, our Supreme Court has previously decided cases on the merits of claims that were not raised to or decided by this court. See, e.g., *State* v. *Ciullo*, 314 Conn. 28, 36, 100 A.3d 779 (2014) (considering additional claim of prosecutorial impropriety not raised to this court); *State* v. *Torrence*, 196 Conn. 430, 434 n.5, 493 A.2d 865 (1985) ("under extraordinary circumstances . . . we may review matters not raised before the Appellate Court and resolve issues not determined by the Appellate Court"). It has also ordered reargument in light of new United States Supreme Court precedent that could control or impact a pending appeal. See, e.g., *State* v. *Hunt*, 156 Conn. 664, 664, 244 A.2d 413 (1968).

Furthermore, our state has a long history of providing litigants with an avenue to raise claims of constitutional magnitude for the first time on appeal. See, e.g., *State* v. *Evans*, 165 Conn. 61, 70, 327 A.2d 576 (1973) (listing the two " 'exceptional circumstances' " in which new constitutional claims will be considered for first time on appeal); *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989) (replacing *Evans* standard and setting forth four-pronged test for review of constitutional

claims raised for first time on appeal), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

Our Supreme Court has more recently discussed this history in *State* v. *Armadore*, 338 Conn. 407, 258 A.3d 601 (2021). Our Supreme Court, noting our state's history of providing litigants with an avenue to raise unpreserved claims of constitutional magnitude, explained: "This court and the Appellate Court, both before and after *Griffith*, have allowed defendants to raise claims on appeal that were *unpreserved* at trial but were premised on a new constitutional rule that applied retroactively to the pending case." (Emphasis in original.) Id., 426. Our Supreme Court held that, "as a general rule, an appellate court ought to grant a request for supplemental briefing when a party asks to entertain an unpreserved claim premised on a newly announced constitutional rule. The briefing should address both the merits of the new constitutional rule and whether it applies to the defendant, as well as whether the claim fails under one of the four prongs of *Golding*. We imagine that briefing would be appropriate in all but the clearest of situations in which the claim would fail under one of *Golding*'s four prongs."[8] Id., 435–36.

Notwithstanding the foregoing precedent, the petitioner argues that the rules of procedure were too rigid to allow him to raise a new constitutional claim on direct

[8] We note that *Armadore* arose in the context of a new constitutional rule that was announced after the parties had filed their appellate briefs and oral arguments had been held in a pending appeal but prior to a decision being released. See *State* v. *Armadore*, supra, 388 Conn. 417–36. At the same time, nothing in *Armadore* limits its application to only those cases in which briefing and oral arguments have concluded but a decision had not been released. To the contrary, our Supreme Court emphasized that "the policies underlying the requirement that new constitutional rules apply retroactively to pending cases weigh in favor of our courts' liberally permitting supplemental briefing to raise unpreserved claims premised on those new constitutional rules when they are announced *during the pendency of a case*." (Emphasis added.) Id., 419. Consistent with that directive, we construe the principles articulated in *Armadore* to apply to situations in which a defendant's appeal is still pending and not yet final, such as the petitioner's case.

appeal after this court has decided his direct appeal but before petitioning for certification to appeal to our Supreme Court. This state's established precedent that allows litigants to raise unpreserved claims of constitutional magnitude for the first time on direct appeal belies the petitioner's contention that no procedural avenue existed for him to raise his due process claim in his direct appeal. See, e.g., id., 426; *State* v. *Golding*, supra, 213 Conn. 239–40; *State* v. *Evans*, supra, 165 Conn. 70. Moreover, the petitioner's case was not final when this court affirmed his conviction on direct appeal because the petitioner still had the opportunity to file a motion for reconsideration with this court and to petition for certification to appeal to our Supreme Court. See *State* v. *Griffith*, supra, 479 U.S. 321 n.6. The petitioner did not avail himself of either of those avenues to raise his due process claim pursuant to *Wang* on direct appeal. He did not file a motion for reconsideration with this court. Instead, he filed a petition for certification to appeal to our Supreme Court, in which he did not raise a due process claim pursuant to *Wang*. The petitioner offers no persuasive reason as to why he could not have alerted this court or our Supreme Court that *Wang* purportedly applied to his case on direct appeal through either a motion for reconsideration or a petition for certification to appeal.

Furthermore, at the habeas trial, the petitioner's appellate counsel, Nagy, testified that she was aware that a *Wang* due process type of claim existed in the petitioner's case but decided against raising such a claim in the petitioner's direct appeal. Specifically, Nagy testified that "a lot of states [had] recognized the right" that our Supreme Court ultimately codified in *Wang* but that she decided against raising it for three reasons: (1) the petitioner ultimately did not represent himself at trial, and he subsequently received the tools to effectuate an

adequate defense through appointed counsel,[9] **(2)** it was an issue of first impression in Connecticut,[10] and **(3)** she was not certain that the petitioner's case was one in which investigative services were reasonably necessary.[11] The record thus reflects that the petitioner's claim was available to him and known by his appellate counsel on his direct appeal.

Therefore, we are not persuaded that the rules of appellate practice were so rigid that they precluded the petitioner from raising his due process claim on direct appeal, such as in a motion for reconsideration in the first instance before this court or in a petition for certification to appeal to our Supreme Court.[12] The record indicates that the petitioner's due process claim was available to him on direct appeal, he chose not to raise it, the respondent has alleged procedural default on collateral review, and the petitioner has not established cause and prejudice to overcome that default. We therefore

[9]The habeas court denied the petition on this very basis, and, in its analysis determining that Nagy did not render ineffective assistance of appellate counsel, noted that, "based on the court's current analysis, the [petitioner's] due process claim does not require reversal of [his] conviction. The petitioner thus suffered no prejudice from the absence of this claim in his appeal."

[10]Although *Wang* involved an issue of first impression in Connecticut, our Supreme Court in *Wang* noted that the "majority of jurisdictions" had applied the due process right identified in *Ake* to nonpsychiatric experts; *State* v. *Wang*, supra, 312 Conn. 235; and other "ancillary defense services," including investigative services. Id., 235–36 n.15 (collecting cases).

[11]We reiterate that one problem Nagy testified that she had with the petitioner's *Wang* due process claim was that she did not know how successful such a claim would be, given the fact that the petitioner ultimately received independent investigative services through appointed counsel.

[12]We make no determination regarding whether the petitioner's attempt to raise a due process claim pursuant to *Wang* before either this court through a motion for reconsideration or to our Supreme Court through a petition for certification to appeal would have been successful in his direct appeal. We merely note that the petitioner had the opportunity to advance such a claim in his direct appeal, but he did not do so.

conclude that the petitioner's *Wang* due process claim was procedurally defaulted.[13]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[13] Because we conclude that the petitioner's due process claim was procedurally defaulted, we make no determination regarding the merits of that claim in this habeas appeal.